People of State of Illinois ex rel. Paul F. Jones, Director of Insurance of State of Illinois, Appellee, v. Chicago Lloyds, Respondent, John Van Nortwick and Helen B. Van Nortwick, Appellants.

Gen. No. 44,638.

Opinion filed March 23, 1950. Released for publication April 13, 1950.

Pope & Ballard, of Chicago, for appellants; Walter I. Deffenbaugh, of Chicago, of counsel.

Ferre C. Watkins, General Counsel, and Glenn, Real & Barnes, all of Chicago, for appellee; Otto W. Barnes and Raymond G. Real, both of Chicago, of counsel.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiff, as director of insurance, filed his petition on February 9, 1938, under the statute, for the liquidation of defendant Chicago Lloyds, organized and authorized to do business under the Insurance Code of 1927, Ill. Rev. Stat. 1929, ch. 73, pars. 548–562, inclusive. In the proceeding upon the petition of plaintiff, as liquidator, the answer of the defendants Van Nortwick, and hearing had, an order was entered finding that there was due to plaintiff, as liquidator, from defendant John Van Nortwick $8,303.05, and from defendant Helen Van Nortwick $354.15. From that order this appeal is prosecuted.

The principal facts were stipulated by the parties. From the stipulation it appears that defendants Van Nortwick, together with many others, became under-

writers, and pursuant to the statutory authority to organize an insurance business under a Lloyds plan, executed their powers of attorney. In accordance with the provisions of such powers of attorney and the requirements of the statute, the Van Nortwicks deposited with the City National Bank and Trust Company, as trustee, securities of the face value of $54,800, which entitled them to a given number of units of the underwriting project. In addition to the deposit of securities, defendants also paid $250 in cash for each $1,000 of securities deposited, which became a part of a reserve fund created and maintained by all of the underwriters for the conduct of the insurance business by Chicago Lloyds. The order appealed from directs that these securities so deposited be liquidated, and the amounts found to be due to the liquidator be paid from the proceeds, unless defendants Van Nortwick otherwise pay said amounts to the liquidator. The powers of attorney were to Associated Underwriters, Inc., which was to conduct the insurance business on behalf of all of the underwriters. Both the statute and the powers of attorney limited the liability of these underwriters to such policies as were issued by Chicago Lloyds and upon which they were underwriters.

The powers of attorney executed by defendants Van Nortwick were dated June 1, 1927, and in accordance with the right granted by the powers of attorney to revoke the same and terminate their liability as underwriters, defendants did revoke their powers of attorney on June 30, 1933, which became effective August 1, 1933. The powers of attorney also provided:

"Thirty days after the expiration and/or liquidation of all of the policies issued or insurance agreements made pursuant hereto, and of the risks thereunder, the account of the undersigned with said attorney, including the amount of securities deposited

255

hereunder, shall be closed, and the amount, if any, to the credit of the undersigned shall then be paid the undersigned, together with the return of all securities if any, then so on deposit.''

The Associated Underwriters, Inc., did not return to these defendants the securities deposited by them, but instead delivered to them a statement dated July 31, 1934, covering their participation as underwriters from 1927 to June 30, 1934, purporting to show an indebtedness from them to Associated Underwriters in the sum of $8,303.05, and notifying defendants that said securities would not be returned to them until said amount was paid. Part of the amount claimed in said statement was made up of an overpayment to defendants of their share of profits in the operation of the business as underwriters in the sum of $1,671.52, which defendants now admit they owe and are willing to pay and have offered to pay. The remainder of the claimed indebtedness shown by said statement is represented by declines in the market values, not of the securities deposited by defendants but investment securities purchased by Associated Underwriters and placed in the reserve of the company. The statement discloses on January 1, 1932, a charge in the account of defendants of $3,360.26, designated as ''loss from market fluctuations on investments''; December 31, 1932, a charge of $4,577.52, described as ''loss sustained on decrease in the valuation of securities.'' A credit of $540.92 and another of $765.33, appearing in the account of defendants, were made due to increases in market prices of such securities in the reserve, leaving a net debit charge resulting from losses and profits upon said securities of $6,631.53, which together with the overpayment of $1,671.52 made up, as noted, the amount claimed, $8,303.05. It is admitted that the entries of depreciation charged and increases credited in the values of the securities held in the reserve ac-

count did not result from actual sales or actual losses, but were due to changes in the then market value.

The stipulation of facts recites:

"The . . . entries relating to fluctuations in the price of securities made as of the close of the three years 1931, 1932 and 1933, did not represent transactions in securities but were memoranda giving effect to fluctuations in prices of securities. All of the securities in the portfolio of Chicago Lloyds, held by the attorney-in-fact, Associated Underwriters, Inc., concerning which such entries were made, were retained by Associated Underwriters, Inc., and were disposed of at various times after June 30, 1934; a sum in excess of the market value thereof on December 31, 1933, having been realized on the sale thereof. Their market value as of June 30, 1934, does not appear, but according to the report of the President of Associated Underwriters, Inc. on February 7, 1934, for the year ending December 31, 1933, said securities in the portfolio, as a whole, had appreciated in value by the sum of $20,-004.45 above their value on December 31, 1933."

It also recites that the new form of power of attorney submitted in November 1936, by Associated Underwriters, Inc., to the underwriters, was never executed by these defendants. This new form materially changed the restrictions of liability of the underwriters, and their deposited securities, from those contained in the powers of attorney executed by defendants.

The controlling question upon this appeal is whether there is anything in the Insurance Code or the powers of attorney which would authorize the charge made for depreciation of securities in the reserve account. It is conceded that at the time of the effective termination date—August 1, 1933—of the liability of these defendants as underwriters, there was no claim of loss then existing or subsequently made by any policy-

257

holder upon any policy for which these defendants were underwriters.

██ The contention of plaintiff is that the statute is broad enough to subject the securities deposited by defendants to the payment of the claims of all creditors, and that no limitation of liability in the powers of attorney can restrict the liability imposed by the Insurance Code. To support this contention plaintiff has throughout his brief relied upon provisions in the 1937 Insurance Code (Ill. Rev. Stat., ch. 73), particularly paragraph 709, which provides that all such deposits of securities by underwriters to idemnify policyholders against loss "shall be considered as admitted assets of such Lloyds," and paragraph 711, which provides that each domestic Lloyds shall at all times keep and maintain in this State admitted assets "including the deposits of underwriters required by section 97," exceeding all outstanding claims "and other liabilities." The Insurance Code of 1937, having been enacted long after the effective date of termination of liability of these defendants as underwriters, could not apply to these defendants upon the question of liability involved in the instant case.

Upon oral argument, plaintiff admitted the mistaken reliance upon the 1937 Code, and argued that the 1927 Insurance Code, the one properly applicable, was substantially like the 1937 Code. A comparison of the two Codes will reveal a substantial difference in them instead of similarity. The provision of paragraph 709 [Jones Ill. Stats. Ann. 66.772] that such securities deposited by underwriters "shall be considered as admitted assets" of such Lloyds does not appear in the 1927 Code. The provision in paragraph 711 [Jones Ill. Stats. Ann. 66.774] that such admitted assets, "including the deposits of underwriters," shall exceed all outstanding claims "and other liabilities" does not appear in the 1927 Code. The 1927 Code, paragraph 549 (4) provides for the deposit of securities by underwriters "to in-

demnify policy holders from loss for liabilities created under policies to be issued." It will be noticed that this paragraph does not include "and other liabilities." Paragraph 554 provides that any such Lloyds authorized to do business shall at all times keep and maintain "a fund of an amount equal to all outstanding claims and other liabilities." There is absent from this paragraph the provision "including the deposits of underwriters," as appears in paragraph 711 of the 1937 Code. In other words, there is no provision in paragraph 554 which would subject the deposited securities of the underwriters not only to the payment of losses on policies, but to "other liabilities" as well. It merely required that there be maintained "a fund" of an amount equal to all outstanding claims and other liabilities. Evidently the legislature intended to supply by the Act of 1937 the absence of the right to subject deposited securities by underwriters to "other liabilities" than that of losses upon policies for which they were underwriters.

 Under the 1927 Code, the powers of attorney in question were required to be filed with the director of insurance and were in the instant case approved by him. The limitation of the liability of the underwriters, contained in the powers of attorney and which governed the securities deposited by defendants as underwriters, was not merely a contract between private parties, but one that became a public record and notice to the public of the limitation of liability. True, the limitation of liability in the powers of attorney could not contravene the liability, if any, imposed by statute, and the statute in such instance would govern. We see no conflict between the restriction of liability in the powers of attorney and that provided for in the 1927 Code.

██ Plaintiff also argues that since it appears that defendants were given credit for increases in valuation of the securities in the reserve fund, which

was reflected in statements rendered to them, they, therefore, are now estopped to disclaim liability for losses upon such securities in the same account. The clear answer to this contention is that the profits referred to were never paid to defendants Van Nortwick, but were merely paper profits the same as the paper losses and, as previously noted, there were no actual sales which resulted in such profits. Suppose the accounts showed this paper profit and no losses, could these defendants have made claim for their proportionate share of such profits? We find nothing in the powers of attorney, or in the plan of organization, or in any provision of the statute which would permit them to sue for or recover such paper profits. The ultimate right in the event of liquidation, if after all claims were satisfied and expense of administration in the liquidation proceedings paid, there remained any surplus in the reserve account, would be to claim their proportionate share of it.

These defendants, upon this record, are shown to be entitled to the return of their securities, subject to their payment to the liquidator of said sum of $1,671.52.

The order of the superior court is reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

NIEMEYER, J., concurs.

TUOHY, P. J., took no part.